IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

DARRELL L. WINSTON                                    PLAINTIFF

v.                              No. 2:10-cv-172-DPM

DEPARTMENT OF ARKANSAS STATE POLICE          DEFENDANT

## ORDER

Darrell Winston faced a hard choice—resign as an Arkansas State
Police Corporal or be fired and lose his retirement. He was involved in
returning a driver's license to a young man who had been cited for driving
under the influence. Winston is black. Did race motivate the State Police in
these circumstances? Would Winston have faced the same hard choice had
he been white? If this case were tried, those would be the questions for the
jury. The State Police have moved for summary judgment on Winston's §
1983 and Title VII claims. Most of the material facts are undisputed. The
Court takes those genuinely disputed material facts in the light more
favorable to Winston. *Lynn v. Deaconess Medical Center–West Campus*, 160
F.3d 484, 486 (8th Cir. 1998).

**1. Facts.** In April 2010, trooper Dwight Griffith arrested Matthew Logan Jones, a minor, for driving while intoxicated. Griffith seized Jones's driver's license as state law required. Jones told Griffith that "Mr. Darrell" would "squash" the ticket. № *23 at 20.* Griffith handed off the license and DWI paperwork to Darrell Winston at Winston's request.

The following week, Griffith encountered Jones again at a sobriety checkpoint. To Griffith's surprise, Jones produced the same driver's license Griffith had seized from him. Griffith immediately approached Winston, who was also at the checkpoint. Griffith showed him the license and Winston "kind of got the deer in the headlights look for a second, a surprised look[.]" № *17–3 at 6.* Winston said that he might have dropped the license while he was inspecting the papers at the Phillips County Sheriff Department. № *17–4 at 3.*

The State Police launched an investigation. № *17–4 at 6.* Winston eventually admitted to an internal affairs investigator that he had given the license and paperwork to a Phillips County official at that person's request, knowing from previous experience that the official fixed tickets. № *17–9 at 16.*

-2-

**2.  Section 1983.**  Winston sued the Department of Arkansas State Police under Title VII and § 1983.  He did not sue any natural person.  As Winston concedes, № *24, at 12–13*, this is fatal for his § 1983 claims.  *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007).  Those claims are dismissed with prejudice.

**3. Title VII.**  Congress has abrogated the State's sovereign immunity for actions under Title VII.  *Winbush v. Iowa*, 66 F.3d 1471 (8th Cir. 1995). So Winston might still recover on his wrongful-termination claim if race was a motivating factor in the State Police's decision and Winston would not have been discharged regardless of his race.  *Richardson v. Sugg*, 448 F.3d 1046, 1057 (8th Cir. 2006).  Without direct evidence (which the parties do not cite and the Court does not see), Winston can raise an inference of discrimination by making a *prima facie* case under the familiar *McDonnell Douglas* framework.  *Lake v. Yellow Transportation, Inc.*, 596 F.3d 871, 873 (8th Cir. 2010).  To make that case he must prove four elements: (1) that he is a member of a protected class; (2) he met the State Police's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *Lake*, 596 F.3d at 874.  The dispute is about the last two.

**4. Termination.**  If Winston cannot raise a fact issue about suffering an adverse employment action, his claim fails at the outset.  He admits that during his internal affairs interview he said several times that he knew he was going to be fired.  *№ 23 at 5.*  Winston also admits that he had prepared a signed letter of retirement/resignation before he left for his May 2010 interview in Little Rock.  *№ 23 at 5.*

Winston said in his deposition that State Police Lt. Tim K'Nuckles called him into his office after that interview and told him, "Darrell, I'm disappointed in you . . . You will be terminated, lose your retirement, and it will be hard for you to get another job in law enforcement with a termination on your [r]esume."  *№ 17–20 at 45* (transcript pagination).  Winston assumed then that the investigation was over, he says, and he gave K'Nuckles his prepared retirement letter.  *№ 17–13.*  A few days later Winston sent a letter purporting to walk back his retirement and resign instead.  *№ 17–16.*

The issue is constructive discharge.  Winston contends that K'Nuckles "knew that [his alleged statement that Winston would lose his retirement] would put a tremendous amount of pressure and stress on [him], and would force him to take a resignation[.]"  *№ 24 at 26.*  The Eighth

-4-

Circuit has held that "an employee's being told that he or she will be fired for cause does not, in and of itself, constitute constructive discharge." *Summit v. S–B Power Tool (Skil Corp.)*, 121 F.3d 416, 421 (8th Cir. 1997). The Court of Appeals also noted, though, that being put to the choice between resignation with retirement benefits and termination without them may create a fact issue here. *Ibid.*, citing *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981). Other courts have agreed. *EEOC v. University of Chicago Hospitals*, 276 F.3d 326 (7th Cir. 2002); *Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990). This Court assumes, therefore, that the law is as Winston argues it to be: a nuclear threat to an employee's retirement security could be as coercive as the changes in working conditions that typify constructive discharge. On this assumption, Winston has made out the adverse-employment-action element of his *prima facie* case.

**5. Disparate treatment.** The circumstances of Winston's discharge would raise an inference of discrimination if similarly situated employees outside the protected class were treated differently. *Lake*, 596 F.3d at 874. Winston says that white troopers who were guilty of comparable misconduct were not told they would be terminated. *E.g., № 24 at 16*.

There may or may not be two lines of Eighth Circuit authority on how similarly situated a plaintiff must be with his comparators to make a *prima facie* case. *Compare Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012) *with Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 858 (8th Cir. 2005) (Colloton, J., concurring). But the cases agree that at the pretext stage the plaintiff must show that he and his comparators were "similarly situated in all relevant respects—a rigorous standard at the pretext stage." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (*en banc*) (quotation omitted). And in light of that standard, it is unnecessary to linger on Winston's *prima facie* case. Assuming he has made one, his claim fails on pretext.

**6. Pretext**. The State Police must produce a nondiscriminatory reason for the action it took. It has done so. The State Police have met their burden—maintaining all the while that no one coerced Winston's resignation and that the State Police did not terminate him at all. Has Winston produced enough evidence to create a genuine issue of material fact on the ultimate question of discrimination? *Torgerson*, 643 F.3d at 1052.

No. The record from the internal affairs investigation shows that Winston's fellow troopers, his superiors, and Winston himself considered

-6-

his offense to be grave from the moment it was discovered.  Trooper Griffith said he believed Winston and a Phillips County official "took care of [his] DWI behind [his] back."  *№ 17–3 at 7; see also № 17–4 at 5.*  Winston admitted that the official had fixed "10-20-30" of his speeding tickets, as well as DWIs issued by other troopers.  *№ 17–9 at 17, 26.*  And the questioning by the Internal Affairs official who interviewed Winston showed a serious concern that Winston had succumbed to official corruption.  *№ 17–9 at 13, 27.*

Winston responds with a list of white troopers who were guilty of misconduct but not forced to resign.  *№ 24 at 16.*  At the pretext stage, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *Wierman v. Casey's General Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (quotation omitted). Some of the white troopers were guilty of serious misconduct.  Some were, like Winston, dishonest during investigations into that misconduct.  *№ 23 at 12–15.*  But none was "similarly situated in all relevant respects." *Chappell*, 675 F.3d at 1118 (quotation omitted).

-7-

The closest to a comparator is Dale Wood, a white officer who refused to arrest a federal officer for DWI, charging public intoxication and careless driving instead. *№ 23, at 15.* Wood was suspended for five days—but a black trooper also participated in the arrest and received the same discipline. *Ibid.* Winston identifies no other trooper who admitted knowingly cooperating in an attempt to fix a ticket.

The Court has considered Winston's other evidence, including statistics (presented without expert analysis) that suggest black troopers are terminated more often than white troopers. *№ 24 at 16.* Winston says that 57% of troopers terminated between 2007 and 2011 are black, though black troopers are only 15% of the force. Only seven troopers were terminated during that period. *№ 24-2 at 18-23.* (One white trooper was terminated twice and reinstated twice.) The Court gives those numbers all the weight they can bear. *Compare Harper v. Trans World Airlines, Inc.,* 525 F.2d 409, 412 (8th Cir. 1975). It remains undisputed that Winston engaged in serious misconduct that directly conflicted with his obligations as a law officer. Winston has pointed to no similarly situated and similarly culpable white officer who kept his or her job. No reasonable jury could say on this record that racial discrimination prompted Winston's discharge.

* * *

Motion for summary judgment, № 17, granted.  Winston's claims are

dismissed with prejudice.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

_7 June 2013_____